### WEEDEN *against* HAWES and others.

A mortgage deed executed with a fraudulent intent, is totally void, and will not be regarded in equity as a valid security for any purpose.

But a mortgage deed obtained under inequitable or suspicious circumstances, but not with a fraudulent intent, may be set aside in part, and allowed to stand as a security for what is equitably due.

Whether a sum of money was included in a mortgage with a fraudulent intent, or not, is a mere question of fact; and if not directly found, by the court below, it cannot be inferred, by this court, from other facts found.

Therefore, where a decree of the superior court, on a bill in chancery to set aside a mortgage deed, on the ground of fraud, detailed the circumstances under which the mortgage was given, and found that a part of the sum included therein was never due, or if ever due, had been paid, but did not find, whether such sum was included with a fraudulent intent, or through inadvertence and mistake; it was held, that the finding was too defective to be the basis of a final decree; and the cause was remanded for a re-hearing, that the question of fraud might be directly answered by the finding.

The account books of a party to a bill in chancery, supported by the testimony of the book-keeper, a disinterested witness, are admissible in favour of such party.

THIS was a bill in chancery, the object of which was, to disencumber certain property mortgaged by *Joseph Hawes* sen. to *Joseph Hawes* jun., by a decree declaring the mortgage deed fraudulent and void, and thus to let in the plaintiff to re-

deem from other creditors, who had valid liens thereon, as if no such deed had been given.

*Windham,*
July, **1834.**

Weeden
*v.*
Hawes.

The property conveyed by the deed, was part of a manufacturing establishment at *Willimantic* in the town of *Windham,* and was denominated the *Willimantic* property. The deed was executed on the 15th of *June,* 1829, by *Joseph Hawes* sen. of *Providence,* to *Joseph Hawes* jun. his son, who, at that time, resided at *Willimantic,* engaged in conducting his father's manufactory. It purported to convey the premises to secure the payment of a note for 4000 dollars, due from the mortgagor to the mortgagee.

On a hearing before the superior court, at *Brooklyn, January* term, 1833, it was found, that certain claims of *Joseph Hawes* jun. against his father, consisting of two checks on the *Eagle Bank* in *Providence,* amounting to 743 dollars, 76 cents, and of a note for 652 dollars, 6 cents, making in the whole 1395 dollars, 82 cents, were never due, or if ever due, were paid before the execution of the mortgage ; that this sum of 1395 dollars, 82 cents, constituted a part of the sum of 4000 dollars secured by the mortgage ; and that the residue of the latter sum was due from the mortgagor to the mortgagee. The allegations in the bill, that the mortgage deed was executed fraudulently, with intent to avoid the payment of the mortgagor's just debts, and to delay and prejudice his creditors, and that the note for 4000 dollars, described in the condition of the mortgage deed, was made without any consideration, with the intent and for the purpose aforesaid, were excepted from the finding. But the following facts, relied upon as badges or evidence of fraud, were found : That *Joseph Hawes,* the mortgagor, having been, for a long time, in good credit, a short time before the execution of the deed in question, became embarrassed and was in failing circumstances; that on *Sunday,* the 14th of *June,* 1829, *Joseph Hawes* jun. left *Willimantic,* and went to his father's in *Providence,* and arrived there in the evening ; that his father sent for Col. *Randall,* an attorney, who came in about 10 o'clock ; that no one was present, except these persons and Capt. *Staples,* a relative of the family, who were engaged in business until some time in the morning of the next day ; that during that time, *Joseph Hawes* sen. executed a mortgage of his homestead in *Providence,* to *Staples,* to secure a debt of 3698 dollars, and a mortgage of some

other real estate in *Providence* to *B. H. Wheeler ;* that *Joseph Hawes* jun. claimed, that his father was largely indebted to him, and produced from his pocket sundry papers, whiĉh he claimed as evidence of subsisting debts against his father, amounting to 5892 dollars, 3 cents, to the validity of which his father assented ; that among these documents were the two checks and the note for 652 dollars, 6 cents, before-mentioned ; that to secure the payment of said sum of 5892 dollars, 3 cents, *Joseph Hawes* sen. gave to his son one note for 1892 dollars, 3 cents, and secured it by a mortgage of his homestead, subject to the incumbrance of *Staples,* and another note for 4000 dollars, which he secured by a mortgage of his *Willimantic* property, the last-mentioned note and mortgage being the principal subjects of the plaintiff's bill ; that *Joseph Hawes* jun., at the same time, claimed an unliquidated account on book to be due him from his father, which, by advice of counsel, was not included in either of said mortgages, and for which *Joseph Hawes* sen. gave his note for 1300 dollars ; and that on the 17th of *June,* 1829, *Joseph Hawes* sen. became openly insolvent, and made an assignment of his estate for the benefit of his creditors.

For the purpose of proving that *Joseph Hawes* sen. was indebted to *Joseph Hawes* jun. on book, the latter offered in evidence his book of accounts, kept at the *Willimantic* manufactory, containing both debt and credit, and therewith offered as a witness one *Cogswell,* who was his book-keeper from *March* 22d, 1828, to *June,* 11th, 1829, to testify, that the book produced was regularly kept, and that the entries made therein were made by him, in the usual course of business. This evidence was objected to, by the plaintiff ; but the court admitted it.

The case was reserved for the advice of this court as to what decree ought in equity to be passed thereon.

*Goddard* and *Strong*, for the plaintiff, contended, 1. That the mortgage was made *mala fide* and infected with *actual fraud.* From the finding of the superior court, this court can infer the fraudulent intent. The superior court finds certain facts to exist—all undoubted badges of fraud,—and finds no excuse for them ; and asks the advice of this court, whether they constitute fraud or not, and what decree shall be passed. In chancery, wherever the badges of fraud appear without ex-

planation, the fraud itself appears. The intent must necessarily be inferred by the court; as there is no jury to draw inferences.

2. That if the deed was made to avoid creditors,—if it was infected with actual fraud,—the plaintiff is entitled to have it wholly set aside. *Bean* v. *Smith,* 2 *Mason,* 296. The *mala fides,* which justly applies to one part, infects the whole. *Boyd* & al. v. *Dunlap* & al. 1 *Johns. Chan. Rep.* 478. *Sands* & al. v. *Codwise* & al. 4 *Johns. Rep.* 536. 598. *Roberts* & al. v. *Anderson,* 3 *Johns. Chan. Rep.* 371. 1 *Madd. Chan.* 262.

3. That if the court cannot here discern a case of actual fraud, yet in chancery this is not necessary. A court of equity will relieve against *presumptive* fraud. *Lawley* v. *Hooper,* 3 *Atk.* 278. 281. *Attorney-General* v. *Vigor* & al. 8 *Ves.* jun. 283. *Bennet* v. *Musgrove,* 2 *Ves.* 51. *How* v. *Weldon* & al. 2 *Ves.* 516. The Earl of *Chesterfield* & al. v. *Janssen,* 1 *Atk.* 352. *Stewart* v. *Stewart,* 5 *Conn. Rep.* 322.

4. That if the mortgage deed is not to be set aside, the plaintiff is entitled to a new trial for the admission of improper evidence. The entries of *Joseph Hawes* jun. were offered and admitted, to prove, that his father was *indebted to him.* They were the declarations of a man *in his own favour;* and were not the less exceptionable, because they were written in a book. 1 *Stark. Ev.* 71. This is not a case of entries by a *deceased* clerk. *Hagedorn* v. *Reid,* 3 *Campb.* 377.

*Randall* and *Welch,* for the defendants, contended, 1. That the finding of the superior court disclosed no actual fraud, but excluded it.

2. That no fraud could be inferred, by this court, from the facts found. In the first place, those facts are not even badges of fraud. But secondly, fraud is a matter of *fact,* which this court cannot infer from mere evidence.

3. That this court will, therefore, consider the sum included in the mortgage beyond what was then due, as having been included through inadvertence, accident or mistake.

4. That if otherwise, yet in the absence of actual fraud, the mortgage will be allowed to stand as a security for the amount actually due. *Watt* v. *Grove,* 2 *Scho. & Lef.* 492. *Proof*

v. *Hines, Talb. Ca.* 111.  *Boyd* & al. v. *Dunlap* & al. 1 *Johns. Chan. Rep.* 478.  *Herne* v. *Meeres,* 1 *Vern.* 465.  S. C. 2 *Bro. Chan. Rep.* 177. n.  *Bennet* v. *Musgrove,* 2 *Ves.* 51.  *How* v. *Weldon* & al. 2 *Ves.* 516.  4 *Johns. Rep.* 599. per *Kent,* Ch. J.  2 *Mason* 298.

5. That the account book of *Joseph Hawes* jr., in connexion with the testimony of *Cogswell,* the book-keeper, was properly admitted.  The entries had been made, not by the party, but by the witness himself, who was present in court, and testified to their correctness.  The case is much stronger than that of *Dwight* & al. v. *Brown* & al. 9 *Conn. Rep.* 83. where the books were kept by the parties, and no witness was called to vouch for their correctness.

DAGGETT, Ch. J.  This court now is called upon to decide a question of *fact.*  The plaintiff insists, that if the sum of 1395 dollars, 82 cents, was included in the 5892 dollars, 3 cents, with a view to augment the demands of *Joseph Hawes* on *Joseph Hawes* jr., and thereby to cover the property from his other creditors, then the deed was fraudulent and void.  On the other hand, it is admitted, that if this sum was inserted by mistake merely, supposing that it was due, and had not been paid, then the deed would be good, and ought to stand as a security for what was actually due.  In this view of the case, it is a mere question of *fact ;* and such a question cannot be decided by this court.  Whether the sum was included with a fraudulent intent, is a sheer question of fact ; and this court being a court of errors, and having no constitutional powers to decide a question of fact, cannot determine this point.  The cause must, therefore, be remanded to the superior court, for a decision of the question, whether that sum was included in the mortgage fraudulently.  This must be the course, unless the proposition is sustainable, that the mortgage shall stand for a security for such sum as is *bona fide* due, though the other sum was included with an intent to deceive and defraud his creditors.  This proposition cannot be supported.  A deed fraudulent in fact is absolutely void ; otherwise of a deed obtained under inequitable or suspicious circumstances.

Where a statute makes a deed void, for any thing done against law, if any part of the consideration is against law, the deed is entirely void.

*Windham,*
July, 1833.

Weeden
*v.*
Hawes.

If the deed in question might stand as a security for what was justly due from the mortgagor to the mortgagee, then it might be protected, if one half or three quarters of the sum was included with an intent to defraud creditors. Such a doctrine would be opposed to the letter and spirit of the statute against fraudulent conveyances. The cause, then, must be remanded, for the purpose of ascertaining how the sum of 1395 dollars, 82 cents, became included in the mortgage.

There is another point to be considered and disposed of. The books of *Joseph Hawes* jr., kept at the *Willimantic* manufactory, in which was his account against *Joseph Hawes*, was admitted, by the court, as evidence of the amount of indebtedness, thereby to justify the mortgage. This was offered and admitted in connection with the testimony of *Coggswell*, the book-keeper, to prove, that the entries of debt and credit were just and regular. I can perceive no valid objection to this testimony. It is the usual testimony in support of a book of a party, and is doubtless admissible, subject to any testimony to show its falsity or errors. This court went much further in the case of *Dwight* v. *Brown*, 9 *Conn. Rep.* 83.

The testimony of the book-keeper, with the book, was properly admitted.

I would, then, advise the superior court, that the facts found are not sufficient to found a decree upon ; and the cause must be remanded to the superior court, to be proceeded with according to law.

The other Judges were of the same opinion, except CHURCH, J., who was not present when the case was decided.

> Evidence admissible.
> Cause remanded.