## MOSES H. SISSON vs. ABEL ROATH AND OTHERS.

A conveyance will not be regarded as fraudulent at common law, merely because the grantee knew that the grantor was insolvent, and had debts by judgment or otherwise outstanding against him.

Nor though the conveyance was made with intent to defraud creditors, if the purchaser did not participate in the fraud.

A conveyance was made by a debtor, in failing circumstances and with a view to insolvency, to a creditor, who took it with knowledge of the circumstances, and with a view to securing a preference over other creditors. By the insolvent act the conveyance was void, if within sixty days proceedings in insolvency were instituted against the debtor. A judgment creditor, whom the debtor had intended to defraud by such conveyance, but of which intent the grantee was ignorant, levied his execution on the land. No proceedings in insolvency were instituted within the sixty days. Held, that the title of the purchasing creditor was good against that of the levying creditor, whether regarded with reference to the insolvent act or the common law.

BILL for a foreclosure.

The petitioner held two mortgages of the same land, one to

secure a note of $500, and the other, of later date, to secure a note of $1,000. Wiley, Newhall & Co., who were made respondents, had levied an execution on the equity of redemption of the mortgagor in the land, and had had the same set off to them, subject only to the incumbrance of the prior mortgage of $500, claiming that the later mortgage was fraudulent and void. The facts, which were found by a committee, are sufficiently stated in the opinion. The case was reserved by the superior court for the advice of this court.

*Halsey* and *Starkweather*, with whom was *Chadwick*, for the petitioner.

*Lippitt*, for the respondents.

SANFORD, J. The validity of the mortgage for five hundred dollars is not denied.

As to the mortgage for one thousand dollars, it is found by the committee that the petitioner, having unsecured debts against Roath of about that amount, and believing that Roath was in failing circumstances, and fearing that he might be driven into insolvency, sold his unsecured claims and loaned the money received for them to Roath, taking for it the note and mortgage now in question; the petitioner's purpose in this transaction being, to obtain a security which would afford him protection against the operation of the act of 1853, entitled "an act for the relief of insolvent debtors and the more equal distribution of their effects among their creditors." These respondents, Wiley, Newhall & Co., had obtained a judgment against Roath, which was then unsatisfied, and Roath intended, by this arrangement with the petitioner, to prevent the collection of that judgment. Roath was in fact insolvent, but the committee finds that although the petitioner knew that Wiley, Newhall & Co. had made a claim on Roath, and had had a lawsuit with him to determine its validity, yet he did not know of the judgment, and it is not found that he was in any manner privy to Roath's fraudulent purpose or intent to prevent the collection of that judgment.

This court can not go beyond the finding of the committee, and therefore, if for no other reason, is bound to treat this, on the part of the petitioner, as a fair business transaction, uncontaminated by any fraudulent purpose or intent. *Weeden* v. *Hawes*, 10 Conn., 50. The question therefore is, whether, in the absence of actual fraud on the part of the petitioner, this mortgage can be set aside at the instance and for the benefit of Wiley, Newhall & Co.

The act of 1855, chap. 68, sec. 1, provides that no conveyance or transfer of property, otherwise valid, shall be made void by any thing contained in the first section of the act of 1853, (the insolvent act above mentioned,) unless within sixty days after such conveyance or transfer shall have been made, proceedings shall be instituted for the purpose of carrying the estate of the party making such conveyance or transfer into settlement as an insolvent estate," &c. And it does not appear that such proceedings have ever been instituted in the case before us, so that this case is unaffected by the act of 1853, and stands upon the principles of our common law.

We understand the settled rule to be, that a purchaser's or mortgagee's title will not be set aside as fraudulent, merely because at the time of its acquisition he knew that his grantor was insolvent, and had debts by judgment or otherwise outstanding against him. In the language of the court in the case of *Beals* v. *Guernsey*, 8 Johns., 451, " The modern doctrine is not merely that the purchaser must know of the judgment; that fact will not of itself defeat a *bona fide* sale or make it in judgment of law fraudulent. If that was the rule it would put a most inconvenient check to the circulation of personal property. The rule is that the purchaser, knowing of the judgment, must purchase with a view and purpose to defeat the creditor's execution. And if he does it with that purpose, it is iniquitous and fraudulent, notwithstanding he may give a full price. The question of fraud depends upon the motive." " Nor can the estate of the grantee be defeated," says Shaw, Ch. J., in *Foster* v. *Hall*, 12 Pick., 99, " by showing a fraudulent purpose in the grantor, unless it be also shown that the grantee participated in it, and by his concurrence promoted

it." See also *Bridges* v. *Eggleston*, 14 Mass., 249, and *Cadogan* v. *Kennett*, Cowper, 432.

These decisions are on this point entirely in accordance with our own. *Partelo* v. *Harris*, 26 Conn., 480. *Beach* v. *Catlin*, 4 Day, 284. *Barrett* v. *French*, 1 Conn., 354. *Pettibone* v. *Phelps*, 13 id., 445.

The superior court is therefore advised to grant the prayer of the petition.

In this opinion the other judges concurred.