## The Phelps Manufacturing Company *against* Enz and others.

Where the plaintiff having a claim against a partnership, but not knowing the names of the several partners, commenced his suit against such partnership, in the company name; he then proceeded to make enquiry for the names of the partners, first, of the one known to him, who refused to give information, and then of others likely to know, but without success, until after the three first days of the court, to which the writ was returnable, had expired; but afterwards, during the same session of the court, he obtained the information sought, and moved to amend the writ, by inserting therein the names of the several persons composing the firm; it was held, 1. that the statute of 1837, under which the motion was made, ought to be liberally construed in furtherance of the remedy; 2. that the plaintiff having used due diligence, his application was within the equity of that statute; 3. that consequently, he might amend, in the same manner he might have done, had he possessed the requisite information and made his motion within the time specified in the statute for that purpose.

Tᴴɪꜱ was an action of book debt. The defendants were described in the writ as "*Steiger Enz & Co.*, of the town of *East-Windsor*, [in this state,] and *Bourry de Invernois & Co.*, of *New-York*," alleging that the individuals of the last named company were unknown to the plaintiffs. The writ was served, by attaching the personal property of *Steiger Enz* in *East-Windsor*, and leaving with him a copy of the writ and of the officer's return ; and was returned to the superior court held at *Hartford*, on the second *Tuesday* of *January*, 1848. No plea in abatement for the non-joinder of other persons as defendants in the suit, was filed ; nor was there any affidavit made that there were other persons than those named as defendants in the writ, who should have been made defendants. No motion was made to amend the writ, during the three first days of the term ; but after the expiration of that period, *viz.* on the 29th day of the term, the plaintiffs moved to amend their writ, by inserting as defendants and partners in the firm of *Steiger Enz & Co.* the names of *William H. Bourry de Invernois* and *James Dorler*, partners, under the firm of *Bourry de Invernois & Co*  The court found, that at the time of bringing the suit, the plaintiffs were ignorant of the names of said partners, and so continued to be, down to the time of making the motion. One of the two partners, whose names the plaintiffs proposed to insert as defendants, resided in the city of *New-York*, and the other in *Europe*. Prior to the session of the court, the plaintiffs had applied to the partner residing in *New-York* for the name of the other partner, in order that it might be inserted in the writ; but such *New-York* partner refused to furnish the name. The plaintiffs then, and before the session of the court, made a similar application to sundry persons in the city of *New-York*, whom they deemed most likely to know the names of the partners ; but without success. As soon as they discovered their names, they made the motion for their insertion.

The defendants claimed, that the court had not by law the power to permit the amendment, under any circumstances, after the expiration of the first three days of the term. This question was reserved for the consideration and advice of this court.

*Hartford,*
June, 1848.

The Phelps
Manufacturing
Company
*v.*
Enz.

*Hartford,*
June, 1848.

The Phelps
Manufacturing
Company
*v.*
Enz.

*T. C. Perkins,* for the plaintiffs, contended, That the writ was amendable, at the time the motion was made.

In the first place, it was amendable under the statute of 1837. *Stat.* 77. ed. 1838. That being a *remedial* statute, the construction will be liberal to advance the remedy. It does not forbid the amendment after the three days : on the contrary, the 2nd and 5th sections seem to contemplate such an amendment. It is not to be supposed that the act designed to prohibit, by *construction,* in one section, what it authorizes in another.

Secondly, there are strong reasons for permitting such amendments. A partnership contracts debts in the name and on the credit of the firm ; but the names of the persons who compose the firm, are not disclosed. They may be residents of another state, or of another country. But the known partner refuses, as in this case, to give the names of his copartners ; and the creditor has not time to ascertain them from other sources. If the construction claimed by the defendants is to prevail, the attachment will be defeated, and the creditor will certainly lose his security, and probably his debt ; and this, not only without any fault of his, but through the wrongful conduct of the debtor.

Thirdly, no advantage can be taken of the omission of the plaintiffs, except by plea in abatement. If that is filed, there can be an amendment, by the express terms of the act. If not filed, the 3d section shows, that the framers of the act expected the cause would go on to judgment ; but it is not supposable that they intended it should go on, in this imperfect shape.

Fourthly, the suit being once well brought, the general statute of amendments applies, and the plaintiff may amend, at any time after the three days, "on the payment of costs, at the discretion of the court." *Stat.* 50, 1. *s.* 33. (ed. 1838.)

*Hungerford,* for the defendants, contended, That the proposed amendment could not be lawfully made.

In the first place, by the common law, a suit cannot be brought by or against partners, in the name of the firm alone. *Seely* v. *Schenck,* 1 *Pennsyl.* 75. *Crandall* v. *Denny, Id.* 137. *Burns* v. *Hall,* 2 *Pennsyl.* 984. *Bentley* v. *Smith,* 3

*Caines*, 170.   *Tomlinson* v. *Bushe*, 5 *Halst.* 295.   *Marshall* v. *Hall*, 8 *Yerger*, 101.

*Hartford,*
June, 1848.

The Phelps
Manufacturing
Company
*v.*
Enz.

Secondly, before the statute of 1837 was passed, an amendment was not allowable, by which a new party was brought upon the record; especially, a party defendant not served with process.   *Peck* v. *Sill*, 3 *Conn R.* 157.

Thirdly, both the statute and common law previously in force remain so still, except so far as the statute of 1837 comes in conflict with and repeals them.

Fourthly, so far as the present question is involved, the act of 1837 comes in conflict with the laws previously in force, in the following particulars only:   1. It authorizes a suit to be brought by or against partners in the name of the firm.   2. The 1st section authorizes the plaintiff to amend, by inserting the names of the individuals composing either or both firms, at any time during the three first days of the term to which the writ is returnable, and is entirely silent in respect to any amendment afterwards; and of course, leaving the question as to the right of amendment after the three first days, precisely as if this section had not existed.   3. The 2nd section limits the right of amendment to two events, *viz.* that of the defendants served with process pleading in abatement the non-joinder of a partner not thus served; and that of a partner served with process making affidavit to the existence of a partner not thus served.   With these exceptions, the act of 1837 is, in respect to the right of amendment, entirely silent, and neither expressly nor impliedly comes in conflict with any previous laws; and, upon established rules of construction, it does not repeal them.

HINMAN, J.   The defendants are a copartnership.   At the time of commencing the suit, the names of some members of their firm were unknown to the plaintiffs.   The action was, therefore, brought against them, by their copartnership or company name.   This being authorized by the statute of 1837, (*Stat.* 77. ed. 1838.) was in every respect regular.   But the plaintiffs were unable to obtain the individual names of all the defendants, in time to amend, by inserting them in the writ within the three first days of the term.   They did, however, obtain them, during the first term of the court; and the question is, whether it is competent for the court to authorize the

*Hartford,*
*June, 1848.*

The Phelps
Manufacturing
Company
*v.*
Enz.

amendment contemplated by the statute, to be made after the three first days of the term have expired.   The defendants insist that this cannot be done.   It is said, that inasmuch as such amendment was wholly unauthorized, previous to the act of 1837; and as that act does not, in terms, authorize it, except within the three first days; there is no power in the court to bring a new party upon the record, after those days have expired, unless in the instances  provided for, in the 2d section of the act.   If this were a penal statute, or of a character to require a literal construction, there would be force in this argument.   Undoubtedly, by the strict letter of the act, no express authority is given for this amendment. The three days, within which such amendments  must generally be made, had expired; and there was no plea in abatement, and no such affidavit by a defendant as is mentioned in the 2d section of the act.   But the obvious intention of the legislature was, to facilitate the bringing of suits, in causes where copartnerships were concerned.   The delay necessary in order to obtain all the names of the members of a firm, often caused great injury to parties.   They were frequently obliged to forego their only opportunity to secure a debt.   The act was passed to remedy this evil.   It introduces a new rule of practice, in certain cases; and this is its whole object.   It may be well doubted, whether the same object might not have been accomplished, by a rule of court, merely. To adopt such a rule would be going but little, if any, farther, in regard to actions at law, than has always been practiced in courts of equity.   Nothing is more common there, than the practice of bringing new parties upon the record, as often as it is discovered that there are parties in interest, who have not been made parties to the suit.   This practice those courts have introduced, for their own convenience, and in order to do complete justice.   There may be more necessity for it in chancery, than in courts of law; but in regard to the power to make rules on the subject, there can be no difference.

However this may be, we cannot doubt that a statute, merely introducing a more just and beneficial rule of practice, ought to be liberally construed, in order to carry out the intention of the legislature.   The question, therefore, is, whether the plaintiffs' application is within the equity of the statute; and we are well satisfied that it is.   They were ig-

norant of the names of some of the partners in the defendants' firm ; and accordingly brought their suit in the manner provided in this statute. Thus far, we have seen, every thing was within the very letter of the law. They then applied to the partner in *New-York* for the names of his associates ; but, for some reason, he refused to give them ; and they could not be obtained in time to amend within the three first days of the term, although all reasonable diligence was used for that purpose. Under these circumstances, it seems but reasonable, that the plaintiffs should have liberty to amend, in the same manner they could have done within the prescribed time, if they had possessed the requisite information at the commencement of the term. And so we advise the superior court.

<div style="text-align:right">

*Hartford,*
June, 1848.

The Phelps
Manufacturing
Company
*v.*
Enz.

</div>

In this opinion the other Judges concurred.

<div style="text-align:center">

Motion to be allowed.