## John G. Fitch *vs.* David G. Gates.

A non-negotiable note payable on demand was executed to $F$ by the defendant. Fourteen years later the note was transferred and delivered by $F$ to the plaintiff in part payment of a debt, and the plaintiff brought suit in his own name thereon under the statute authorizing a suit so to be brought. At the time the plaintiff took the note of $F$ the defendant had for several years had a claim on book against $F$ greater than the note. The plaintiff knew this and had shortly before been present at a meeting of $F$ and the defendant at which they had attempted to adjust their mutual claims, and at which $F$ had told him that he intended to apply the note in part payment of his indebtedness to the defendant. He also knew that the defendant expected such application to be made. The application however was not actually made at the time, the parties separating without having agreed as to the exact balance due. Whether the defendant could set off his claim against the note in the suit : *Quære.* The authorities both English and American are in conflict and confusion upon the point.

Whether or not such set-off could be made in an ordinary case, yet here the plaintiff must be regarded as having taken the note with full knowledge of an understanding of the parties that it should be applied upon the book account of the plaintiff and therefore as having taken it subject to the right of the defendant to make the set-off.

It was not found in terms that $F$ was insolvent at the time the set-off was sought to be made, but it appeared that the defendant had obtained judgment against $F$ more than a year before for the amount, that the debt had then been of several years standing, and that the execution obtained upon the judgment had never been collected. Held that it might reasonably be inferred that $F$ had not the means of payment or that they were beyond the reach of legal process.

Assumpsit, by the plaintiff as assignee of a non-negotiable note, against the maker; brought to the Court of Common

Pleas of New London County, and tried on the general issue, with notice of a set-off, closed to the court. The court found the facts and reserved the case for the advice of this court. The facts are fully stated in the opinion.

*Pratt* and *Thresher*, for the plaintiff, cited *Wheeler* v. *Raymond*, 5 Cowen, 231 ; *Raymond* v. *Wheeler*, 9 id., 295, 300 ; *Johnson* v. *Bridge*, 6 id., 693 ; *Bridge* v. *Johnson*, 5 Wend., 342 ; *Gunn* v. *Scovil*, 5 Day, 113.; *McLean* v. *McLean*, 1 Conn., 397 ; *Palmer* v. *Green*, 6 id., 14 ; *Francis* v. *Rand*, 7 id., 221 ; *Pitkin* v. *Pitkin*, 8 id., 325 ; *Savings Bank* v. *Bates*, id., 505 ; *Robinson* v. *Lyman*, 10 id., 30 ; *Starkie* v. *Peters*, 18 id., 181 ; *Eastern Bank* v. *Capron*, 22 id., 639 ; *Nichols* v. *Dayton*, 34 id., 65 ; *Bishop* v. *Fowler*, 35 id., 5 ; 1 Swift Dig., 434, 713 ; *Holland* v. *Makepeace*; 8 Mass., 418 ; *Grew* v. *Burditt*, 9 Pick., 265 ; *Chandler* v. *Drew*, 6 N. Hamp., 469 ; *McDuffie* v. *Dame*, 11 id., 244 ; *Adams* v. *Bliss*, 16 Verm., 39 ; *Robinson* v. *Breedlove*, 7 Port., 541 ; *Cumberland Bank* v. *Hand*, 3 Harr., 222 ; *Gregg* v. *James*, Breese, 107 ; *Beals* v. *Guernsey*, 8 Johns., 446, 452 ; *Wickham* v. *Miller*, 12 id., 320, 323 ; *Burroughs* v. *Moss* 10 Barn. & Cress., 558.

*Lucas*, with whom was *Park*, for the defendant, cited Gen. Statutes, p. 24, sec. 109 ; 1 Parsons on Cont., (5th ed.,) 230 ; *Robinson* v. *Lyman*, 10 Conn., 30 ; *Babcock* v. *Callender*, 17 id., 34 ; *Benjamin* v. *Benjamin*, id., 110 ; *Ripley* v. *Bull*, 19 id., 53 ; *Adams* v. *Leavens*, 20 id., 73 ; *Peabody* v. *Peters*, 5 Pick., 1 ; *Thomas* v. *Lewis*, 9 id., 367 : *Baxter* v. *Little*, 6 Met., 7 ; *Bond* v. *Fitzpatrick*, 4 Gray, 91 ; *Sanborn* v. *Little*, 3 N. Hamp., 539 ; *Shapley* v. *Bellows*, 4 id., 347 ; *Myers* v. *Davis*, 22 N. York, 489 ; *Brashear* v. *West*, 7 Peters, 608 ; Chitty on Cont., 138, and note *m* ; Waterman on Set-off, 113, 114, 116, 125, 130, and notes.

FOSTER, J.   A note for $88.84, payable to John Fitch, on demand with interest, was given him by the defendant on the 21st of February, 1853.   On the 26th of August, 1867, this note

was transferred and delivered to the plaintiff, by the payee, in part payment of a debt due from the payee to the plaintiff. This suit is brought by the plaintiff in his own name, by virtue of the provisions of our statute of 1864, authorizing the assignee and equitable and bona-fide owner of any chose in action, not by law negotiable, thus to sue. The facts are found by the Court of Common Pleas, and the case is reserved for the advice of this court as to what judgment shall be rendered.

In addition to the fact that the plaintiff took this note when more than fourteen years overdue, it appears that he took it with knowledge that the defendant, the maker of the note, had a claim on book against John Fitch, the payee, and for several years had had such claim, greater in amount than the amount of the note. The plaintiff had been present on two several occasions when John Fitch and the defendant were together for the purpose of settling up all accounts and demands subsisting between them. The last of these meetings was at the plaintiff's house, and he was told by John Fitch that he intended to apply this note, and other notes held by him against the defendant, to liquidate or set off his indebtedness on book. The plaintiff also knew that the defendant understood and expected that the balance due him on book was to be applied to pay the note, but the parties separated without agreeing as to the exact balance so due, and without actually applying it upon the note. Very soon after, this note was assigned to the plaintiff, and on the defendant's refusal to pay it, which was immediately after payment was demanded, this suit was commenced. The defendant subsequently prosecuted his claim against John Fitch to final judgment, and now holds an execution against him for $250, damages, and $49.08, costs, dated the 22d of June, 1871, which he seeks to set off against this note; denying also that the plaintiff is the equitable and bona-fide holder of the same. The plaintiff insists that he is the bona-fide holder, and that he is not liable to such set-off.

The question of set-off must be determined by our statute, which is a transcript of the English statute of 2d George II.

Various points in the law of set-off have frequently been discussed and decided in this court. Most of the cases are collected in a note to *Ripley* v. *Bull*, 19 Conn., 58, 2d ed.

We have regarded the decision of the English courts as authorities ; our statute upon this subject and theirs being similar, and in some clauses identical. In the earlier cases the courts in England gave the statute a liberal construction, regarding it a remedial one, and thus protected almost every description of equitable interest, even against the claims of assignees, indorsees, &c. The sphere of the influence of this statute seems gradually to have been contracting, and the later cases certainly tend to restrict its application solely to claims between the parties on the record. The cases of *Bottomley* v. *Brooke*, 1 T. R., 621, *Rudge* v. *Birch*, 1 T. R., 622, *Brown* v. *Davis*, 3 T. R., 80, with others which might be quoted, decided in the latter part of the last century, and in the beginning of this, are examples of the former class of these cases. *Burrough* v. *Moss*, 10 Barn. & Cress., 558, (21 E. C. L., 128,) *Isberg* v. *Bowen*, 22 Eng. Law & Eq., 551, (8 Exch. Rep., 52,), and *Oulds* v. *Harrison*, 28 Eng. Law & Eq., 524, are examples of the latter class of cases. Several of the earlier cases have been distinctly overruled ; indeed Baron Parke in *Isberg* v. *Bowen* says " they may be considered exploded." The case of *Burrough* v. *Moss* was quoted by this court with approbation in *Robinson* v. *Lyman*, 10 Conn., 30, and seems to have had a controlling influence in its decision, for PETERS, J., said he thought the law was otherwise till he saw that case. The case of *Isberg* v. *Bowen* seems to restrict the application of the statute to mutual, legal debts between the parties of record. The action was for freight, due under a charter party. Plea, that the plaintiff entered into the charter party as master of the ship, for and on behalf of and as agent for the owner, that the plaintiff had no beneficial interest in the charter, or any lien on the freight, and that he brought the action solely as agent and trustee for the owner, who was indebted to the defendant in a certain amount, which the defendant offered to set off. This plea was held insufficient on demurrer ; the Court of

Exchequer deciding that " the statute of set-off did not apply."
Baron Martin in giving the opinion of the court, said, " The
statute enacts that 'where there are mutual debts between
the plaintiff and the defendant, one debt may be set against
the other.' This is the whole enactment as applicable to the
present case, and upon its true construction the question de-
pends. If the words of the statute had been, that where there
were mutual debts, the one might be set against the other,
the argument for the defendant would have had more weight;
but these are not the only words, for the debts are to be
mutual debts between the plaintiff and defendant; and there
is no debt here due from the plaintiff at all; and except
the words, 'between the plaintiff and the defendant,' can be
excluded, the plea cannot be maintained. *   *   *   *   Look-
ing at the plain words of the statute, we best give effect to
the true rule now adopted by all the courts at Westminster
for its construction, by holding that inasmuch as the debts
are not mutual debts, between the plaintiff and the defendant,
the one cannot be set off against the other." This case was
decided in 1853; that of *Burrough* v. *Moss* in 1830. A still
more recent case is that of *Oulds* v. *Harrison,* which certainly
goes a very extreme length. It was an action brought by an
indorsee of a bill of exchange, overdue, against the acceptor.
The defendant pleaded that after the bill became due, and
before indorsement, the drawer was indebted to the defendant
in a sum exceeding the amount of the bill; and that the
drawer, in order to defraud the defendant, and in collusion
with the plaintiff, indorsed the bill to the plaintiff after it
became due, without consideration, in order to enable him to
sue the defendant on it, and that the plaintiff sued merely as
the agent of the drawer, and in collusion with him, and that
the sum due from the drawer to the defendant had not been
paid. On demurrer to this plea the court held it no answer
to the action, and gave judgment for the plaintiff.

Turning from the English to the American cases, and going
no farther than to the state of New York and to our sister
states of New England, we find a great want of harmony in
the decisions upon this subject. The statutes of some of

these states, particularly of Rhode Island and Vermont, contain some provisions of a peculiar character ; hence, decisions in those states will not be of equal authority, outside their several jurisdictions, as if their statutes were similar to our own. Such is the case of *Trafford* v. *Hall*, 7 R. Isl., 104, and *Adams* v. *Bliss*, 16 Verm., 39, both of which seem to have been fully examined and carefully considered. The statutes of New York, Massachusetts, New Hampshire, and Maine, are substantially like our own ; but the decisions of their courts, upon matters of set-off, differ widely from each other, and there is, not infrequently, a direct conflict between those of the same state.

The early decisions in the state of New York favored very strongly the claim of set-off. *Furman* v. *Haskins*, 2 Caines, 368, *O'Callaghan* v. *Sawyer*, 5 Johns., 118, and *Ford* v. *Stewart*, 19 Johns., 342, are examples. In *O'Callaghan* v. *Sawyer* the action was brought by the indorsee of an overdue promissory note against the maker. The defendant claimed to set off a debt due him from the payee and indorser. In the Common Pleas the set-off was denied, but in the Supreme Court the judgment was reversed. The court say:—" The set-off ought to have been received. The note had long been due and dishonored when it was indorsed, and the point has been too long settled and too repeatedly recognized to require any discussion now, that the indorsee takes the note subject to all the equity and to every defence which existed against it in the hands of the original payee." This was in 1809, and nearly twenty years after the same court, in the case of *Johnson* v. *Bridge*, 6 Cowen, 693, overruled this decision, and others of like character, laying down as law that there could be no set-off except as against the plaintiff on the record. This case went to the Court of Errors, and is reported in 5 Wend., 342. On the question, " Shall this decision be reversed ? " the court stood twelve to twelve ; so it was affirmed. Had the rules of the court permitted the question to have been put in the opposite form, " Shall this decision be affirmed ? " of course it would have been reversed. In a subsequent case, *Driggs* v. *Rockwell*, 11 Wend., 504, the Court of Errors re-

·versed the decision of the Supreme Court which had rejected the set off, on the ground that it was not admissible except as against the party to the record. The Chancellor, in giving the opinion of the court on reversal, says: "In the case of a promissory note transferred after due, and thus dishonored on its face, and where according to well settled and indisputable authorities it is taken wholly on the credit of the assignor, I would not only allow a set-off against the party to the record, and the party in interest, but against every party through whose hands it has passed." This was after the revision of the statutes which defined the circumstances under which a set-off might be made in an action on a promissory note overdue, but the court said that the right existed before as well as after the revision.

In the case of *Farrington* v. *The Park Bank*, 39 Barb., 645, though it involved no question of set-off, and though it differs in essential points from the case at bar, yet the rights of the holder for value of a promissory note overdue and dishonored, were discussed and considered. The court say, p. 651: "The holder takes it in the light of an assignee from the person from whom he receives it, rather than an indorsee according to the usage of trade, and he therefore takes just such title, and no other, as his assignor had to it at the time of the transfer."

There are numerous cases in Massachusetts. *Holland* v. *Makepeace*, 8 Mass., 418, was an action on two checks, brought by an assignee. The defendant claimed to set off a note which he had purchased against the payee of the checks, and which he held when the checks were transferred to the plaintiff. The decision was that the note could not be set off, and the reasoning of the court supports the doctrine that set-offs are confined to the parties in the suit. In a subsequent case, *Peabody* v. *Peters*, 5 Pick., 1, the same court seemed to recognize as law, that filing an account in set-off is a remedy that exists only *inter partes* to the contract. In the case of *Sargent* v. *Southgate*, 5 Pick., 312, a different conclusion was arrived at by the same court. That was an action brought by the indorsee of an overdue promissory note, and the de-

fendant was allowed to set off a negotiable note made to him by the payee, and held by the defendant before the transfer of the note in suit. PARKER, C. J., in giving the opinion of the court says: "It is true that the statute of set-off contemplated mutual demands between the same parties; but the common law or law merchant treats the holder of a promissory note, which was dishonored when he took it, as the party to the contract for all purposes of defence, when he shall put his note in suit." This case was decided on full consideration, and has ever since been followed in Massachusetts.

In *Ranger* v. *Cary*, 1 Metc., 375, in *Baxter* v. *Little*, 6 Metc., 7, and in *Bond* v. *Fitzpatrick*, 4 Gray, 89, the court recognized the correctness of this decision, notwithstanding the different decisions in England under a similar statute. In *Vinton* v. *King*, 4 Allen, 565, METCALF, J., in summing up the defences available against the indorsee of a promissory note, among others enumerates " a legal set-off against him [the payee] to the amount thereof." The statutes of Massachusetts, as revised after the decision of *Sargent* v. *Southgate*, were changed in their phraseology apparently rather to make their provisions clear and specific, and in conformity with that decision, than to enact a new law.

In New Hampshire, in *Woods* v. *Carlisle*, 6 N. Hamp., 27, the Supreme Court of that state say—" We are inclined to think that when a man takes a discredited note, and sues in his own name, when the defendant has a set-off against the indorser, the indorser must be considered the plaintiff within the meaning of the statute. The indorsee stands in the place of the indorser." The contrary of this doctrine was soon after expressly held by the same court in the case of *Chandler* v. *Drew*, 6 N. Hamp., 469. That was an action by the indorsee of a discredited promissory note against the maker, and it was held that a set-off against the indorser could not be made. The court say: " The indorsee cannot be considered as standing in the place of the indorser, unless the note can be considered as still due to the indorser, or the indorsee, by taking the discredited note, as having made the

set-off his own debt, either of which is repugnant to common sense." The opinion of the court is very elaborate; the New York and Massachusetts cases, *O' Callaghan* v. *Johnson, Ford* v. *Stewart*, and *Sargent* v. *Southgate*, are examined, and the grounds on which they rest pronounced unsound and unsatisfactory. This case of *Chandler* v. *Drew* has been sustained in New Hampshire by more recent cases. See *Jenness* v. *Bean*, 10 N. Hamp., 267, and *Williams* v. *Little*, 11 N. Hamp., 72. In *McDuffie* v. *Dame*, 11 N. Hamp., 244, the court say that the case of *Chandler* v. *Drew* is opposed to the prevailing doctrine in other states, and that it should not be extended beyond its precise limits. In *Odiorne* v. *Woodman*, 39 N. Hamp., 545, the court recognize the right of set-off, under certain circumstances, of a claim against the indorser, though the action be by the indorsee.

The Supreme Court of Maine, in the case of *Shirley* v. *Ford*, 9 Greenlf., 83, recognized the right of set-off by defendant against the indorsee of a dishonored bill, of a claim against the payee. In *Ward* v. *Warren*, 19 Maine, 23, the case of *Sargent* v. *Southgate* is referred to as sound law.

A general examination of the decisions of our sister states, and the courts of the United States, would be entering upon wilds immeasurably spread, already quite too lengthened. To reduce them to order, and extract from them any uniform principle, would be quite impossible. We forbear; we should but lose ourselves in the mazes of legal uncertainty. "Whether under our statute a set-off can be made," said WILLIAMS, J., in giving the opinion of the court in *Stedman* v. *Jillson*, 10 Conn., 50, "in a case where the plaintiff sues in his own right, and the debt is against another person, not a party to the record * * * * no opinion is expressed; on that question learned judges have widely differed." These differences have been vastly multiplied in the forty years nearly since this opinion was pronounced.

Perceiving, as we do, other grounds, to us abundantly satisfactory, on which to rest our judgment, we shall pass over without deciding, this vexed question of set-off, and thus avoid adding another to the too long list of conflicting decisions.

Fitch v. Gates.

The arrangement for a settlement and set-off had been so far completed in this case, between John Fitch and the defendant, that a court of equity would readily have enforced it. The parties had, in effect, agreed as to the mode of paying this note; the plaintiff had actual knowledge of each and every fact connected with that agreement, and which, in a manner, attached to the note itself before he took it. It would be unjust and inequitable that the defendant should now be compelled to pay this plaintiff, when it seems more than probable that he will lose his claim against John Fitch, which is the larger in amount. True, there is no finding that he is insolvent, but the fact that this debt has been in execution for more than a year, and has not been paid, shows clearly either an inability, or an indisposition, on his part, to make payment. That the execution has not been levied and collected, raises a violent presumption, that if the debtor have means of payment, those means are quite beyond the reach of legal process. In view of all the facts, this plaintiff is not the equitable and bona-fide owner of this note, and therefore cannot recover. The instrument on which the action is brought was not made negotiable by the parties, and though the statute authorizes another than the original party now to sue, we cannot presume that there was any intention by that change of the law, to affect or impair an equitable right.

We advise the Court of Common Pleas to render judgment for the defendant.

In this opinion the other judges concurred.